ANTHONY J. YONADI AND HELEN YONADI, PLAINTIFFS-
RESPONDENTS, v. HOMESTEAD COUNTRY HOMES,
INC., HOMESTEAD SHORE & COUNTRY HOMES, INC.,
AND BOROUGH OF SPRING LAKE HEIGHTS, DEFEND-
ANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued April 25, 1955—Decided May 13, 1955.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Edward F. Juska* argued the cause for plaintiffs-respondents.

*Mr. Robert V. Carton* argued the cause for defendant-appellant, Borough of Spring Lake Heights (*Messrs. Durand, Ivins & Carton,* attorneys).

*Mr. William J. O'Hagan* argued the cause for defendants-appellants, Homestead Country Homes, Inc., and Homestead Shore & Country Homes, Inc. (*Messrs. Stout and O'Hagan,* attorneys).

The opinion of the court was delivered by

CLAPP, S. J. A. D. This appeal has to do with the law of casual surface waters. The principal question presented (to state the case very generally) is whether a person improving a tract of land and constructing and maintaining drains therein is to be charged with liability for a resultant increase in the flow of surface water which runs off the tract upon plaintiffs' lands.

Plaintiffs own a golf course and restaurant located on the south side of Allaire Road, Spring Lake Heights. The tract mentioned, consisting of 40 acres, lying across the road on the north side, had been farming land until 1950, but since then the private corporate defendants, or one of them, have erected on it 169 houses. Generally speaking, the natural drainage of this land is southerly, passing from this tract through ditches and a swale once existing on the property now constituting the golf course, and so eventually to the Atlantic Ocean. There was testimony that the run-off from

improved residential areas, such as the development here with its catch basins and sub-surface drains, is about 3½ times that coming from the more absorbent soil of the farm land formerly here. In times of heavy rain, excess water has produced flood conditions on plaintiffs' property.

█ The court sitting without a jury gave judgment for the plaintiff against the borough and the two private corporations, awarding damages of $2,500 against all three defendants, and

(a) restraining them from "using or permitting the artificial collection of waters, and from collecting and diverting it thereby on the lands of the plaintiffs, to the harm of the plaintiffs," and

(b) ordering defendants "to accomplish this work" (*sic*) within 90 days.

These directions do not comply with *R. R.* 4:67–5. The injunction should specify in reasonable detail and with some precision "this work" so that the defendants may readily know what it is they must "accomplish." See *Sun Dial Corp. v. Rideout*, 17 *N. J.* 517, 519 (1955).

But we move on to the substantive issues. The trial court seems to have been of the view that the casting of surface waters, in unusual or substantial quantities, through artificial means, on the land of another, was, without more, unlawful and actionable. This, we think, is error.

██ The general rule is that neither the diversion nor the altered transmission, repulsion or retention of surface water gives rise to an actionable injury. Generally, therefore, he who improves or alters land is not subjected to liability because of the consequences of his acts upon the flow of surface water. *Bowlsby v. Speer*, 31 *N. J. L.* 351 (*Sup. Ct.* 1865); *Town of Union v. Durkes*, 38 *N. J. L.* 21 (*Sup. Ct.* 1875); *Jessup v. Bamford Bros. Silk Mfg. Co.*, 66 *N. J. L.* 641 (*E. & A.* 1901); *McCloskey v. Atlantic City Railroad Company*, 70 *N. J. L.* 20 (*Sup. Ct.* 1904); *Kaufman v. Bergen Turnpike Co.*, 71 *N. J. L.* 33 (*Sup. Ct.* 1904); *Lightcap v. Lehigh Valley R. Co. of New Jersey*, 90 *N. J. L.* 620 (*E. & A.* 1917); *Fitz-Patrick v. Gourley*, 104 *N. J. Eq.* 281 (*Ch.*

1929) ; *Nathanson v. Wagner,* 118 *N. J. Eq.* 390 *(Ch.* 1935) ; *Zamelli v. Trost,* 132 *N. J. L.* 388 *(Sup. Ct.* 1945), affirmed 133 *N. J. L.* 465 *(E. & A.* 1945) ; *McCullough v. Hartpence,* 141 *N. J. Eq.* 499 *(Ch.* 1948) ; *Saco v. Hall,* 1 *N. J.* 377, 381, 383 (1949) ; *Niestat v. Equitable Security Co.,* 6 *N. J. Super.* 148 *(App. Div.* 1950).

Under this rule it matters not that the flow of water upon plaintiffs' property is much increased or accelerated or its force aggravated. *Town of Union v. Durkes,* 38 *N. J. L.* 21 *(Sup. Ct.* 1875) ; *Miller v. Mayor, etc., of Morristown,* 47 *N. J. Eq.* 62, 65 *(Ch.* 1890), affirmed 48 *N. J. Eq.* 645 *(E. & A.* 1891) ; *Sullivan v. Browning,* 67 *N. J. Eq.* 391, 394 *(Ch.* 1904).

In pursuance of this rule, it has been held that the mere filling in of a tract of land "to such an extent as to work a change in the topography of the land, and to cause the surface water to run in a southerly, instead of, as formerly, in an easterly course," is not actionable. *Lightcap v. Lehigh Valley R. Co. of New Jersey,* 90 *N. J. L.* 620, 621 *(E. & A.* 1917). In accord see *Nathanson v. Wagner,* 118 *N. J. Eq.* 390, 395 *(Ch.* 1935) ; *Sullivan v. Browning,* 67 *N. J. Eq.* 391 *(Ch.* 1904) (but as to the use of bunkers, *cf. Kinyon and McClure, Interference with Surface Waters,* 24 *Minn. L. Rev.* 891, 917, 1940) ; *Kaufman v. Bergen Turnpike Co.,* 71 *N. J. L.* 33 *(Sup. Ct.* 1904) ; *Fitz-Patrick v. Gourley,* 104 *N. J. Eq.* 281 *(Ch.* 1929). *Cf. Jessup v. Bamford Bros. Silk Mfg. Co.,* 66 *N. J. L.* 641, 645 *(E. & A.* 1901) stating that the above-stated general rule applies where " 'a party * * * changes the direction and flow of surface water by * * * changing the level of the soil, so as to turn it off in a new course * * *.' "

There are or may be a number of exceptions to this rule. *Cf. Bowlsby v. Speer,* 31 *N. J. L.* 351, 353 *(Sup. Ct.* 1865) ; *Lulevitch v. Roberts,* 98 *N. J. Eq.* 373 *(E. & A.* 1925) ; *Brownsey v. General Printing Ink Corp.,* 118 *N. J. L.* 505 *(Sup. Ct.* 1937) ; *Kidde Mfg. Co. v. Town of Bloomfield,* 28 *N. J. Super.* 355, 363 *(Law Div.* 1953). But we need consider only one of them.

■ This exception arises where a defendant improving or altering land interferes with the flow of surface water, not by making a change in the grade or surface of the land, but by means of drains, ditches or other artificial contrivances for the very purpose of transmitting the water. Under this exception, a defendant renders himself absolutely liable if by means of such an artificial device he causes surface water to be carried in a body large enough to do substantial injury (usually drainage from a large tract) and thereby casts it on plaintiff's lands away from where it otherwise would have flowed. *Inhabitants of Township of West Orange v. Field*, 37 *N. J. Eq.* 600 (*E. & A.* 1883), affirming 36 *N. J. Eq.* 118 (*Ch.* 1882); *Soule v. City of Passaic*, 47 *N. J. Eq.* 28 (*Ch.* 1890); *Fuller v. Township of Belleville*, 67 *N. J. Eq.* 468 (*Ch.* 1904); *Kehoe v. Borough of Rutherford*, 74 *N. J. L.* 659 (*E. & A.* 1907); *Doremus v. Mayor, etc., of City of Paterson*, 73 *N. J. Eq.* 474, 487 (*Ch.* 1908); *Dohrmann v. Board of Chosen Freeholders of County of Hudson*, 84 *N. J. L.* 689 (*E. & A.* 1913); *Jerolaman v. Town of Belleville*, 90 *N. J. L.* 206 (*E. & A.* 1917); *Cassini v. City of Orange*, 107 *N. J. Eq.* 128 (*Ch.* 1930); *Rooney v. Millstone Township*, 121 *N. J. L.* 624 (*E. & A.* 1938); *Peter Wendel & Sons, Inc., v. City of Newark*, 138 *N. J. Eq.* 69 (*Ch.* 1946); cf. *Gould & Eberhardt, Inc., v. City of Newark*, 6 *N. J.* 240, 243 (1951)—the facts of this case bring it within this exception; *Miller v. Mayor, etc., Morristown*, 47 *N. J. Eq.* 62 (*Ch.* 1890), affirmed 48 *N. J. Eq.* 645 (*E. & A.* 1891)—the second branch of the opinion (the facts of the case also bring it within this exception. Note the words, 47 *N. J. Eq.*, at *page* 64, referring to water "carried away from where it would naturally go." See *Jerolaman v. Town of Belleville*, 90 *N. J. L.* 206, 208 (*E. & A.* 1917)). See, too, the words of Judge Jayne in *McCullough v. Hartpence*, 141 *N. J. Eq.* 499, 501 (*Ch.* 1948), to the effect that the general rule obtains so as to exonerate a proprietor interfering with the flow of surface water—

"provided he does not alter, by artificial means, the natural discharge of the surface water from his land on that of his neighbor, by conducting it *into new channels* in unusual quantities to or on

a particular part or parts of the latter's land, to its injury" (emphasis added).

Very similar words will be found in *Nathanson v. Wagner*, 118 *N. J. Eq.* 390, 393 *(Ch.* 1935); *Field v. Inhabitants of Township of West Orange*, 36 *N. J. Eq.* 118, 120 *(Ch.* 1882) (in affirming this case, 37 *N. J. Eq.* 600, *supra*, the Court of Errors and Appeals did not repeat this language but more explicitly brought the case within the exception stated. The matter is clearly laid out in *Field v. Township of West Orange*, 46 *N. J. Eq.* 183 *(Ch.* 1885)); *cf. Kelly v. Dunning*, 39 *N. J. Eq.* 482, 483 *(Ch.* 1885). *Cf.* the law in other jurisdictions. *Kinyon and McClure*, 24 *Minn. L. Rev.* 891, 917, *supra;* 6*A American Law of Property* 189 (1954).

█ But this exception does not apply where the surface water is brought to the locality substantially where it otherwise would have flowed. In such a case we are thrown back upon the general rule. Thus, if through a drain or other artificial means, a defendant effects a concentration in the flow of surface water but brings it to the locality substantially where it otherwise would have flowed, the damage is not actionable. See *Jessup v. Bamford Bros. Silk Mfg. Co.*, 66 *N. J. L.* 641, 645 *(E. & A.* 1901):

"The surface water flowing * * * over the land of the defendants would, if that land had been left in an unimproved state, have naturally flowed [where in fact it did flow after the improvements, namely, through a drain and weep-holes in a retaining wall]. The erection of the dye house and retaining wall by the defendant did not have the effect of increasing in any degree the flow of the surface water, or of causing it to be discharged in any greater quantity upon the sidewalk. It merely concentrated the flow in certain places upon it. This concentration was a necessary incident of the legitimate beneficial user of their property by the defendants, and any injury arising therefrom is not actionable."

See *Cavanagh v. Hoboken Land, etc., Co.*, 93 *N. J. L.* 163, 164 *(E. & A.* 1919). So it was held in *Saco v. Hall*, 1 *N. J.* 377, 383 (1949),

"Where the owner of the property has constructed a system of drains, gutters or leaders to drain excess water off his structures or

property, the rule of *Jessup v. Bamford Bros.* [*Silk Mfg. Co.*] set out above shall apply."

See *Niestat v. Equitable Security Co.*, 6 *N. J. Super.* 148, 153 (*App. Div.* 1950), dealing with a leader pipe causing waters to run off on another's property. See, too, *Zamelli v. Trost*, 132 *N. J. L.* 388 (*Sup. Ct.* 1945), affirmed 133 *N. J. L.* 465 (*E. & A.* 1945), where defendant (maliciously) constructed a ditch on his lands catching the surface water and causing it to flow over a dam he placed in the ditch and thus to seep upon plaintiff's property. *Cf. Lulevitch v. Roberts*, 98 *N. J. Eq.* 373, 375 (*E. & A.* 1925). But see *Weisberger v. Maurer*, 9 *N. J. Misc.* 117, 120 (*Cir. Ct.* 1930), affirmed 109 *N. J. L.* 273 (*E. & A.* 1932).

While the New Jersey cases do not deal with the matter explicitly, we conclude that where surface water is concentrated through a drain or other artificial means and is conducted to some place substantially where it otherwise would have flowed, the defendant will not be liable even though by reason of improvements he has made in the land, the water is brought there in larger quantities and with greater force than would have occurred prior to the improvements. The policies underlying the general rule come to bear here. What reasonably could the upland proprietor or occupant do in the present case with this excess water? Rather than require him to dispose of it—and so perhaps require him to secure the cooperation of a number of lowland properties through which the water must eventually be brought—the burden is cast on each lowland proprietor to protect his own land.

The law on this whole subject has received its most comprehensive treatment in recent years in the article by *Kinyon and McClure*, above cited. Further, see *Farnham, Waters and Water Rights* (1904); 2 *U. of Fla. L. Rev.* 392 (1949); 6A *American Law of Property* § 28.63 (1954).

There are three rules in this country as to surface water. First, there is the Massachusetts and New Jersey rule—the general rule above stated—adopted in some 22 jurisdictions. It is known as the common enemy rule, after a phrase employed by Beasley, C. J., in *Town of Union v. Durkes*, 38

N. J. L. 21, 22 (*Sup. Ct.* 1875), which, though apparently inaccurate in its allusion, nevertheless is a not inappropriate appellation of the fundamental concept of the rule. *Kinyon and McClure, supra,* at 901, 902. This rule obviously favors the improver of property, at the expense of neighbors who are affected by his disposition of the surface water.

Second, there is the civil law rule prevailing in some measure in 18 states, including Illinois and Pennsylvania. Under it the proprietor of the higher land has a natural servitude in the lower land to accommodate the natural flow (and no more than the natural flow) of surface water from his land. This servitude, the proprietor of the lowland cannot obstruct. 11 *Md. L. Rev.* 58 (1950); *cf. Lulevitch v. Roberts,* 98 *N. J. Eq.* 373, 375 (*E. & A.* 1925). Beasley, C. J., in his forcible style in *Bowlsby v. Speer,* 31 *N. J. L.* 351 (*Sup. Ct.* 1865), exposed the general infirmities of this doctrine, though he did not mention it.

There is a third rule in force only in two jurisdictions, nevertheless representative also of a recent tendency in the law of other jurisdictions. Under it a person altering his land is placed under a duty in connection with surface water not to act unreasonably under the circumstances. *Prosser, Torts* 587 (1941); 6A *American Law of Property* 190 (1954); 12 *A. L. R.* 2d 1340; *Brownsey v. General Printing Ink Corp.,* 118 *N. J. L.* 505 (*Sup. Ct.* 1937); *cf. Granger v. Elm Tree Village, Inc.,* 23 *N. J. Super.* 592, 598 (*Ch. Div.* 1952); but *cf. Consolidated Safety Pin Co. v. Town of Montclair,* 102 *N. J. Eq.* 128, 130 (*Ch.* 1928), affirmed 103 *N. J. Eq.* 378 (*E. & A.* 1928). *The Restatement of Torts,* § 833, has adopted this view.

It will be found that the law of surface waters in this country, including this State, was first laid down about a century ago (see *Kinyon and McClure,* 24 *Minn. L. Rev.* 891, *supra*) in the light of the law of private nuisances as it then stood. And it may therefore be said by some students of the matter—having regard to the tendency then to look upon an interference with the use or enjoyment of land, as an absolute, either black or white, imposing either absolute liability or

absolute non-liability—that the law as to surface waters is out of keeping with the notions of today as to private nuisances. As to the law generally with respect to interferences with the private use of land, *cf. Restatement of Torts* §§ 822–833; further see *e. g., Ettl v. Land & Loan Co.*, 122 *N. J. L.* 401 (*Sup. Ct.* 1939). As to the law of water courses, which has grown up apart from that as to surface waters, see *Hughes v. Knight*, 33 *N. J. Super.* 519, 523 (*App. Div.* 1955).

But the question is not as easily disposed of as that. The strong public policies favoring the development of land, which underlie the common enemy doctrine, not to speak of the practicalities of the doctrine, have made themselves felt under the rule of reasonable user also. So under the latter rule the erection of buildings in an urban locality is regarded as of such high utility that in the absence of exceptional circumstances, the resultant invasion of another's enjoyment of land, through surface waters, is not actionable. *Restatement of Torts* § 833*b*. Thus, under the doctrine of reasonable user there are rules, limited it is true, but nevertheless representative of a crystallization of judicial opinion, as to what under certain circumstances is reasonable or unreasonable as a matter of law. *Restatement of Torts* § 826*d*. In our view the common enemy doctrine and the exception to it above stated are crystallizations of this very sort.

The problem before us then is simply to apply the above stated rule and exception to the circumstances here. Of the 40 acres, 28 and another two acres still drain to the locality substantially where they would otherwise drain, had there been no development. In these 30 acres, as above indicated, not only has there been an increase in the flow of the surface water as a result of the development, but catch-basins and drains have been constructed and the land seems in places to have been elevated; however, in our view, the plaintiffs cannot complain of any of these acts. Furthermore the mere fact that at one point a level 15-inch pipe was tied into a 12-inch pipe running under Allaire Road (it has been said that these two pipes have recently been disconnected)

creates at most a concentration of the water which, as above indicated, is not actionable.

Hence, with respect to 30 acres the defendants are all exonerated under the general rule. Illustrative of the virtue of the simple rules of thumb which have been adopted in this State—in contrast to the rule of reason which ordinarily calls for a determination by the trier of fact in each case as to what is reasonable under the circumstances, *Restatement of Torts* §§ 826*d,* 833*b*—and illustrative too of the virtue of *stare decisis,* is the plan here of the engineer for the development. His original scheme proceeded upon the premise that the bringing of the surface water to substantially the place where it would naturally flow, relieved the developer of liability

The defendant borough claims it has accepted only streets and drains lying within the 28 acres. If this is so (the matter is not entirely clear on the record before us), there is no cause of action as against it. This question we therefore leave to the trial court to be disposed of on the remand.

The next question in the case is whether there is any liability with respect to the ten acres remaining from the 40, after deducting the 30 acres mentioned. There is testimony that the surface water here was drained away from the place where it would otherwise flow; and so in connection with these ten acres we are concerned with the exception stated above. However, there is also testimony that even as to this land, the water was brought to the Helbig ditch, "the ultimate point of disposal, regardless of whether pipes were put in or not." The proofs being unclear on the point, the case will have to be remanded to determine in what respects, if any, there is, as to this ten acres, liability under the principles above stated. If such liability is established, plaintiffs are entitled to injunctive relief and to such damages as are allocable to the ten acres.

If the drainage water from these ten acres has been carried away from the place where it otherwise would flow, defendants may relieve themselves of liability as to the same in the future, provided they re-channel this water back sub-

stantially to that place—that is, to the place where under the engineer's original design of the development, it was intended to go. This follows from what has already been said.

Reversed and remanded.